**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Invitrogen Corporation and Kettlebrook Insurance Company,<br><br>        Plaintiffs,<br><br>vs.<br><br>Employers Insurance Company of Wausau a/k/a Employers Insurance of Wausau,<br><br>        Defendant. | No. CV-06-0232-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendant Employers Insurance Company of Wausau's ("Defendant" or "Wausau") Motion for Summary Judgment Regarding Arbitration Requirement (Dkt.#20); Plaintiffs Invitrogen Corporation's ("Plaintiff Invitrogen" or "Invitrogen") and Kettlebrook Insurance Company's ("Plaintiff Kettlebrook" or "Kettlebrook") (collectively "Plaintiffs") Motion for Summary Judgment on Arbitrability (Dkt.#22); and Plaintiffs' Motion for Summary Judgment on All Claims Other than Arbitrability. (Dkt.#23). After reviewing the pleadings and the record in this case and determining oral argument to be unnecessary, the Court issues the following Order.

**I.      Procedural History**

On January 18, 2006, Plaintiffs filed the instant Complaint in this Court asserting three counts of: (1) declaratory relief; (2) breach of contract; and (3) injunctive relief. Plaintiffs

contemporaneously filed a motion for a preliminary injunction against Defendant Wausau seeking to enjoin Wausau from asserting its demand to arbitrate its dispute with Plaintiff Kettlebrook regarding reinsurance payments allegedly owed to Wausau by Kettlebrook. On February 13, 2006, the Court held a hearing regarding Plaintiffs' preliminary injunction request. (Dkt.#13). The Court granted Plaintiffs' motion enjoining Wausau "from pursuing the arbitration of the dispute of reinsurance payments it contends are owed to it under a reinsurance contract between it and Plaintiff Kettlebrook." (Dkt.#14). The Court noted that "[i]n reviewing the dispute and pleadings offered by the parties it is clear that this dispute does not touch on the reinsurance contract entered into between these parties, but rather will be determined by the terms of the settlement agreement entered into between Plaintiff Invitrogen and Defendant finalized on April 7, 2003." (Id.). In response to the Court's order, the Parties entered into a stipulation regarding a briefing schedule to address on the merits the issue of arbitration as well as any other issues in the case. The Court approved the stipulation and entered a briefing schedule. (Dkt.#17). Both Wausau and Plaintiffs have filed the instant motions for summary judgment on the issue of arbitration and Plaintiffs have also moved for summary judgment as to all claims other than the arbitration claim. The motions are fully briefed.

**II.     Factual Background**

In 1992 through 1994, several civil actions were filed in Maricopa County Superior Court against Dexter Corporation, Plaintiff Invitrogen's predecessor in interest, related to issues of environmental contamination. The litigation, <u>Baker v. Motorola</u>, CV92-02603 and <u>Lofgren v. Motorola, Inc.</u>, CV93-05221, CV93-15612 and CV94-02603 is referred to by the Parties as the "Underlying Mogul Site Litigation." As a result of the claims asserted in the Underlying Mogul Site Litigation, Plaintiff Invitrogen sought coverage under the insurance policies Wausau had previously issued to Dexter. After some dispute as to coverage, if any, Plaintiff Invitrogen initiated a civil action against Wausau in Maricopa County Superior Court, CV02-000169, seeking a declaration of coverage in response to the Underlying Mogul Site Litigation as well as asserting claims of breach of contract and bad faith. Wausau

eventually removed the case to this District before the Honorable Frederick J. Martone, CV 02-0874-PHX-FJM. This litigation is referred to as the "Arizona Coverage Lawsuit" by the Parties. Wausau, in turn, filed its own civil action in the Superior Court of Hartford, Connecticut, CV02-0814524-S claiming that it had no duty to defend or indemnify Invitrogen in connection with the Underlying Mogul Site Litigation. This litigation is referred to by the Parties as the "Connecticut Coverage Lawsuit." After approximately one year of litigation in the Arizona Coverage Lawsuit and the Connecticut Coverage Lawsuit, the parties to the litigation entered into a settlement agreement (the "Settlement Agreement") to resolve their pending claims. The Settlement Agreement, with the named Parties of Invitrogen and Wausau, was executed on April 7, 2003.

In 2005, Wausau sought to obtain reinsurance payments from Plaintiff Kettlebrook pursuant to the reinsurance contracts Wausau and Kettlebrook had previously entered into commencing in 1984. Wausau sought reinsurance under the reinsurance contracts for its share of the sum paid in settlement to Invitrogen, or $175,000. In response to Wausau's request, Invitrogen responded by way of letter on September 29, 2005 asserting that Wausau was not entitled to any reinsurance payments from Kettlebrook due to the scope of the Settlement Agreement, which included Invitrogen's subsidiaries, such as Kettlebrook. (Plaintiffs' Statement of Facts "PSOF" ¶ 25). Wausau disputed Plaintiffs' position and pushed the matter towards contractual arbitration pursuant to Article VII of the reinsurance policy between Wausau and Kettlebrook stating in pertinent part:

> Should an irreconcilable difference of opinion arise as to the interpretation of this contract, it is hereby mutually agreed that, as a condition precedent, to any right of action hereunder, such difference shall be submitted to arbitration...

(PSOF ¶34).

Plaintiffs responded by filing the instant suit and disputing the application of the reinsurance policy to the dispute regarding Wausau's claim for reinsurance payments from Kettlebrook. Plaintiffs rely on the language of the Settlement Agreement entered into resulting from the underlying coverage litigation between Invitrogen and Wausau on April 7, 2003. Paragraph 13(c) of the Settlement Agreement states in pertinent part:

> Invitrogen and Wausau covenant not to commence or pursue any action, claim or legal proceeding in the future against each other relating in any way to the claims, actions, causes of action, rights, liabilities, obligations, demands, and requests released in this Agreement pursuant to paragraph 3, above, except to the extent necessary to enforce the Agreement.

(PSOF ¶22).

Moreover, Invitrogen is defined in the Settlement Agreement to include "Invitrogen Corporation, and its present or former agents, officers, directors, shareholders, employees,...[and] subsidiaries,..." (PSOF ¶11). The Settlement Agreement, unlike the reinsurance contract between Wausau and Kettlebrook, does not contain any arbitration provision.

In light of the specific terms of both the reinsurance contract and Settlement Agreement, the Parties have disputing views as to these agreements' significance. Plaintiffs contend that Wausau's position as to contractual arbitration is misplaced as the dispute between the Parties touches not on any reinsurance policy but rather on the terms and conditions of the Settlement Agreement. In addition, Plaintiffs contend Wausau's claim for reinsurance is equally misplaced as the Settlement Agreement expressly prohibits such a claim. Conversely, Wausau asserts that the terms of the reinsurance policy control regarding the issue of arbitration and that Plaintiffs' reliance on the terms of the Settlement Agreement is without merit. Moreover, Wausau contends that even if the reinsurance payment issue is not arbitrable, Plaintiffs' reliance on the Settlement Agreement to bar Wausau's reinsurance claim must fail.

**III.     Standard**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but

1  ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).
2  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348
3  (1986). The evidence must be viewed in the light most favorable to the nonmoving party.
4  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**IV.     Analysis**

**A.     Arbitrability**

As noted above, the Parties to this litigation have differing positions regarding the significance of the relevant agreements to the issue of arbitration; *i.e.*, the reinsurance policy between Wausau and Kettlebrook and the Settlement Agreement between Invitrogen and Wausau. In short, should the Court find itself in agreement with Wausau that the terms of the reinsurance policy control, then Plaintiff Kettlebrook would be contractually obligated to arbitrate Wausau's claim for reinsurance payments with Kettlebrook. As noted above, Article VII of the reinsurance policy states in pertinent part:

> Should an irreconcilable difference of opinion arise as to the interpretation of this contract, it is hereby mutually agreed that, as a condition precedent, to any right of action hereunder, such difference shall be submitted to arbitration...

(PSOF ¶34).

Plaintiffs; however, contest Wausau's reliance on the reinsurance policy for several reasons. First, according to Plaintiffs, Article VII of the reinsurance policy has no application to the issue of arbitration, because there is no "irreconcilable difference of opinion ... as to the interpretation of this [the reinsurance] contract." Rather, according to Plaintiffs, the "difference of opinion" is limited solely to the Settlement Agreement entered into between Invitrogen and Wausau and does the bear on the reinsurance policy. Plaintiffs contend that the issue for the Court to consider is whether the Settlement Agreement applies equally to Plaintiff Kettlebrook, as a subsidiary of Invitrogen, and provides against any type of reissue claim. Thus, according to Plaintiffs, the issue of reinsurance payments is centered only on the Settlement Agreement, which does not contain any type of arbitration clause.

As the Court found in its preliminary injunction order on this issue, the Court again finds, upon summary judgment standard, that the contractual arbitration sought by Wausau with

respect to its entitlement to reinsurance payments is misplaced. The Court's determination is based upon the fact that the Settlement Agreement directly controls whether Wausau has a right to reinsurance payments against Kettlebrook and not the reinsurance policy. For instance, the Settlement Agreement, as addressed more fully below, entered into prior to Wausau's claim for reinsurance payments, potentially releases Kettlebrook, an undisputed subsidiary of Invitrogen,[1] from any contractual obligation to afford reinsurance coverage to Wausau. The Settlement Agreement arguably creates a broad release to Invitrogen and Kettlebrook by stating in pertinent part:

> Invitrogen and Wausau covenant not to commence or pursue any action, claim or legal proceeding in the future against each other relating in any way to the claims, actions, causes of action, rights, liabilities, obligations, demands, and requests released in this Agreement pursuant to paragraph 3, above, except to the extent necessary to enforce the Agreement.
> (PSOF ¶22).

This provision arguably releases not only the claims from the underlying coverage litigation between Invitrogen and Wausau, but also any claim "relating in any way" against Kettlebrook, as the subsidiary of Invitrogen. Thus, importantly, the issue of reinsurance payments does not presently touch on the reinsurance policy between Wausau and Kettlebrook. Rather, the dispute between the Parties with regard to any alleged reinsurance payments owed to Wausau is centered squarely on the application and scope of the Settlement Agreement. Notably, the arbitration provision of the reinsurance policy is only invoked in instances where there is "an irreconcilable difference of opinion ... as to the interpretation of this [the reinsurance] contract..." (PSOF ¶ 34). No such conflict has arisen as the dispute falls squarely within the terms and conditions of the Settlement Agreement and its application to Kettlebrook. As such, as the Court previously found, and does so upon summary judgment, "it is clear that this dispute does not touch on the reinsurance contract

---

[1] As noted below, "Invitrogen" as defined in the Settlement Agreement is "Invitrogen Corporation, and its present or former agents, officers, directors, shareholders, employees,...[and] subsidiaries,..." (PSOF ¶11). Thus, according to Plaintiffs and disputed by Wausau, Kettlebrook is also protected by the Settlement Agreement.

- 6 -

1 entered into between these parties, but rather will be determined by the terms of the settlement agreement entered into between Plaintiff Invitrogen and Defendant finalized on April 7, 2003." (Dkt.#14).

In making this determination the Court finds unpersuasive several of the arguments advanced by Wausau. Most notably, the Court finds unpersuasive Wausau's reliance on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. Wausau notes that a court's role under the FAA is limited to determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." E.g. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). As to the first element, there does not appear to be any dispute that the reinsurance policy, containing the arbitration provision, between Wausau and Kettlebrook is valid. However, the second element demonstrates the inapplicability of the FAA to the instant case as the reinsurance policy does not "encompass the dispute at issue." Rather, the dispute bears on the terms and conditions of the Settlement Agreement, which does not possess any type of arbitration provision. The issue between the Parties regarding reinsurance payments, is not that Kettlebrook is somehow relieved of its contractual obligation to provide reinsurance payments to Wausau because of the terms and provisions of the reinsurance policy; rather, the dispute is that Wausau's claim for reinsurance payments may have been released because of the scope and application of the Settlement Agreement. As such, the reinsurance policy does not "encompass the dispute at issue" and thus, the FAA, upon which Wausau relies, is inapplicable to this case.

The Court also finds unpersuasive Wausau's lengthy argument focused on the specific terms of the Settlement Agreement in support of its position that Kettlebrook was not in fact released from its contractual obligation to provide reinsurance payments to Wausau. (Wausau's Motion for Summary Judgment, Dkt.#20, pp.12-16). In fact, Wausau's argument directed to the specific terms of the Settlement Agreement, further supports the Court's conclusion that it is the terms and conditions of the Settlement Agreement that are at dispute in this litigation, not the terms and conditions of the reinsurance policy. Because the terms

of the Settlement Agreement are at the center of the dispute, the arbitration provision of the reinsurance policy has no application.

In sum, with respect to the issue of arbitrability, the Court finds, upon summary judgment, that the arbitration clause of the reinsurance policy between Wausau and Kettlebrook has no application to the issues and litigation presented before the Court. No "irreconcilable difference of opinion" as to the interpretation of the reinsurance contract has arisen. (PSOF ¶34). Rather, the difference of opinion is over the scope and application of the Settlement Agreement. As such, the Court will grant summary judgment in favor of Plaintiffs regarding their declaratory claim as to the issue of arbitrability.

**B.     Non-Arbitration Claims**

In addition to Plaintiffs' declaratory claims regarding the issue of arbitration, Plaintiffs seek summary judgment as to their declaratory claim that Wausau's reinsurance claims against Kettlebrook violate the terms of the Settlement Agreement and constitutes a breach of contract. In opposition to Plaintiffs' claims, Wausau has asserted several claims including: (1) Plaintiff Kettlebrook has breached its contractual obligation as outlined in the reinsurance agreements; (2) Plaintiff Kettlebrook breached its duty of good faith and fair dealing by failing to pay the reinsurance payments; and (3) Plaintiff Invitrogen breached the Settlement Agreement by initiating the instant lawsuit. With respect to these remaining pending claims, the Parties again have differing interpretations as to the scope of the Settlement Agreement and its impact regarding Wausau's claim for reinsurance payments from Kettlebrook.

According to Plaintiffs, the Settlement Agreement provides, unambiguously, against Wausau's claim for reinsurance payments as the Settlement Agreement released any such claims. Plaintiffs rely on the fact that Kettlebrook, as a subsidiary, of Invitrogen is subject to benefit of the terms and conditions of the Settlement Agreement. Most notably, Plaintiffs rely on the terms of the Settlement Agreement which provide a release as to "any action, claim, or legal proceeding in the future against each other relating in any way to the claims, actions, causes of action..."(PSOF ¶ 22).   Based upon this language, and the finality contemplated by parties to the Settlement Agreement, Plaintiffs contend that Wausau's claim

for reinsurance payments in the amount of $175,000 is barred as any such claim was released and extinguished.

In opposition, Wausau asserts that the Settlement Agreement does not support the interpretation advanced by Plaintiffs. In citing to several Arizona cases, *i.e.*, Taylor v. State Farm Mutual Automobile Ins. Co., 175 Ariz. 148, 854 P.2d 1134 (1993) and Sam Levitz Furniture Co. v. Safeway Stores, Inc., 105 Ariz. 329, 464 P.2d 612 (1970), Wausau asserts that Arizona law demonstrates that Plaintiff "Kettlebrook was never part of the settlement calculus." (Wausau's Response, Dkt.#28, p.2). Wausau contends that "there is absolutely no evidence that, at the time of contracting, Wausau knew or should have known of Invitrogen's alleged intent" that the Settlement Agreement would release Wausau's claim against Kettlebrook. Id. Specifically, Wausau points to ambiguity regarding the scope of the Settlement Agreement's release provision, upon which Plaintiffs rely, with regard to the language stating "Invitrogen and Wausau covenant not to commence or pursue any action, claim, or legal proceeding in the future against each other relating in any way to the claims, actions, causes of action,..." (PSOF ¶22). Wausau asserts that "[d]eciding the parties' intent based solely (sic) a common or ordinary understanding of the term 'relating' would transgress the teachings of *Taylor* because it ignores the fact that there is a context for the deal Wausau and Invitrogen were reaching." (Wausau's Response, Dkt#28, p.5). In addition, Wausau contends that there is insufficient evidence before the Court to conclude that Invitrogen's settlement strategy also included Kettlebrook. (Id. p.6).

A review of Arizona law is controlling as to construction and understanding of the terms and conditions of the Settlement Agreement. Contract interpretation is the process by which courts determine the meaning of the words of a contract entered into between the parties. Taylor, 175 Ariz. at 152. When interpreting a contract, the court will attempt to "ascertain and give effect to the intention of the parties at the time the contract was made if at all possible." Id. (citing Polk v.Koerner, 111 Ariz. 493, 495, 533 P.2d 660, 662 (Ariz. 1975)). To accomplish this goal, the contract should be "read in light of the parties' intentions as reflected by their language and in view of all circumstances." Harris v. Harris, 195 Ariz. 559,

- 9 -

562, 991 P.2d 262, 265 (Ariz.App. 1999). For instance, "[a] party should be permitted to determine the operative meaning of the words [of a contract] by proving that both parties so understood them, or that he so understood them and the other party knew that he did, or that he so understood them and the other party had reason to know that he did." Sam Levitz, 105 Ariz. at 331 (citing Corbin on Contracts, Vol. 3 § 538, page 59). If the parties use language that is mutually intended to have a special meaning, and that meaning is proved by credible evidence, a court is obligated to enforce the agreement according to the parties' intent. Id. at 153. With respect to the use of extrinsic evidence to ascertain the parties' intent, under Arizona law, the judge is to first consider the evidence offered and if the contract language is "reasonably susceptible" to the interpretation asserted by the proponent, the evidence is admissible. Id. at 154. "On the other hand, if the court finds that the written language is not "reasonably susceptible' to the interpretation asserted by the proponent of the extrinsic evidence then the court must preclude admission of any extrinsic evidence or argument that would actually vary or contradict the meaning of the written words." Long v. City of Glendale, 208 Ariz. 319, 328, 93 P.2d 519, 528 (Ariz.App.. 2004) (citing Taylor, 175 Ariz. at 155). The question of whether written language is "reasonably susceptible" to the meaning asserted is a matter of law, not of fact. Id.

In the instant case, in viewing the arguments and evidence cited by the Parties, the Court finds that the language of the Settlement Agreement is clear on its face and the interpretation advanced by Wausau is not "reasonably susceptible" to the interpretation advanced. The plain language of the Settlement Agreement evidences that both contracting parties, Invitrogen and Wausau entered into the agreement to bring a final resolution to underlying coverage litigation as well as any claims arising out of and relating to the underlying coverage litigation applicable to not only named parties but the related subsidiaries, such as Kettlebrook.

**(1) The Settlement Agreement Applies to Kettlebrook Although Not Expressly Named in the Settlement Agreement.**

Contrary to Wausau's argument, it is not credible to argue that Kettlebrook should be excluded from the scope of the Settlement Agreement because Wausau was not aware that Kettlebrook was a subsidiary of Invitrogen. As noted above, in expressly defining the scope of the contracting parties, "Invitrogen" is defined as "Invitrogen Corporation, and its present or former agents, officers, directors, shareholders, employees,...[and] subsidiaries,..." (PSOF ¶11). There is no dispute between the Parties that Kettlebrook is in fact a subsidiary of Invitrogen. Wausau's argument; however, is that at the time of entering into the Settlement Agreement, it was not aware of this relationship and thus should not be bound by the broad scope of the Settlement Agreement with respect to Kettlebrook. However, this argument is directly contrary to Arizona's view of contract interpretation in situations where one party to the contract understands the contract to mean one thing and the other party to the contract knows or has reason to know that that party understands the contract to mean that thing. See Sam Levitz, 105 Ariz. at 331 ("a party should be permitted to determine operative meaning of words of agreement by proving ... that he so understood them and the other party had reason to know that he did."). In the instant case, the plain language of the Settlement Agreement is clear in demonstrating that Invitrogen understood the Settlement Agreement to provide a broad release of any claims related to the underlying coverage litigation and, more importantly, Wausau, at the very least, had reason to know that Invitrogen did. As noted above, in defining "Invitrogen" in the Settlement Agreement, Invitrogen's subsidiaries are plainly identified to be included subject to the terms and conditions of the Settlement Agreement. (PSOF ¶11). In addition, the Settlement Agreement possesses multiple instances demonstrating Invitrogen's and Wausau's intent to bring finality to the underlying litigation. For instance, ¶ 8 of the Settlement Agreement notes that the parties "agreed that by entering into this Agreement the Parties intended to preclude further litigation costs and to buy their peace." (PSOF ¶9). Wausau's claim for reinsurance payments from Invitrogen's subsidiary is in contradiction to the parties' intent of "buy[ing] their peace" and is further directly contradictory to the binding impact of the Settlement Agreement to not only the named contracting parties, but to their subsidiaries as well.

1    Moreover, Wausau's argument regarding the significance of the absence of any express
2 reference to Kettlebrook in the Settlement Agreement or during discussions is not persuasive.
3 Based upon the plain language, Invitrogen clearly intended the broad scope of the Settlement
4 Agreement, including its application to its subsidiaries such as Kettlebrook.  More
5 importantly, based upon the plain language, Wausau knew or should have known that the
6 broad scope included Kettlebrook, an undisputed subsidiary of Invitrogen.  The Settlement
7 Agreement is a product of a mutual agreement between corporate entities with the assistance
8 of legal counsel.  Whether Wausau failed to properly investigate the scope of the Agreement
9 is of little consequence as it should have or could have known that Kettlebrook was a
10 subsidiary of Invitrogen. The Court finds Wausau's reliance on Spain v. General Motors
11 Corp, Chevrolet Motor Div., 171 Ariz. 226, 829 P.2d 1272 (Ariz.App. 1992), to support its
12 position on this point unpersuasive.   In Spain, the Arizona Court of Appeals held that the
13 plaintiff accident victim's release to the other driver in a car accident containing language of
14 "any other person, firm or corporation ... chargeable with ... liability," did not constitute an
15 express release of the car manufacturer and seller of plaintiff's automobile, and thus did not
16 preclude plaintiff's action based upon a defective seat belt against the car manufacturer and
17 seller. Id. at 227.  The Arizona Court of Appeals noted that there was no evidence that the
18 parties to the agreement intended the release to apply to the car manufacturer and car seller.
19 Id.  The instant case is quite different. First, Invitrogen is expressly defined in the Settlement
20 Agreement to include its subsidiaries, *i.e.*, Kettlebrook.  Thus, the scope of the release is
21 narrower in scope than the language at issue in Spain.  Second, the plain language of the
22 Settlement Agreement evidences the Parties' intent to generate a final conclusion to the
23 underlying coverage litigation as well as any related litigation between the Parties including
24 their subsidiaries.  No such intent existed in Spain with respect to the car manufacturer and
25 car seller.  Id.   The fact that Wausau's claim for reinsurance payments was not expressly
26 identified in the Settlement Agreement does not somehow carve out an exception to the
27 broad release provision evidencing the Parties' intent to generate a final conclusion to the
28 underlying coverage litigation.  See In re Estate of Lamparella, 210 Ariz. 246, 250-51, 109

P.3d 959, 963-64 (stating that contracts "are to be read in light of the parties' intentions as reflected by their language and in view of all circumstances; if the intention of the parties is clear from such a reading, there is no ambiguity") (quoting <u>Harris</u>, 195 Ariz. At 562).  It is also relevant to note that the Settlement Agreement not only applies to Invitrogen's subsidiaries, but Wausau also enjoys the benefit of the application of the Settlement Agreement to its subsidiaries.  (Dkt.#3, Exhibit A, ¶ 1D).  Thus, were the roles reversed, Wausau could invoke the release provision of the Settlement Agreement as to its subsidiaries.

As such, the Court finds that based upon the plain language of the Settlement Agreement and surrounding evidence it is clear that the Settlement Agreement applies to both Invitrogen and its subsidiaries, such as Kettlebrook.  The Court further finds that Wausau's argument and evidence to a contrary interpretation of the Settlement Agreement is not "reasonably susceptible" to the position advanced.

### (2) The Settlement Agreement Bars Wausau's Claim for Reinsurance Payments Against Kettlebrook.

The Court further finds that the Settlement Agreement bars Wausau's reinsurance payment claim to Kettlebrook, as the reinsurance claim falls within the scope of the Settlement Agreement.  As previously noted, the Settlement Agreement provides a broad release as to "any action, claim, or legal proceeding in the future against each other relating in any way to the claims, actions, causes of action... (PSOF ¶ 22).  Wausau's claim for reinsurance payments from Kettlebrook clearly constitutes either an "action or a claim" against Kettlebrook.  Second, and more importantly, Wausau's claim  "relate[s] in any way" to the claims, action and causes of action pending in the underlying coverage litigation that produced the Settlement Agreement.  To briefly review, Invitrogen sought insurance coverage from Wausau in the Underlying Mogul Site Litigation, which ultimately resulted in the Arizona Coverage Lawsuit and the Connecticut Coverage Lawsuit.  The Settlement Agreement provided a complete settlement of the pending claims culminating in payment of $175,000 to Invitrogen from Wausau to extinguish Invitrogen's claims.  However, rather than resulting in a termination of all claims "relating in any way," to the underlying coverage

litigation, Wausau in turn, asserted a claim for reinsurance for the exact amount it paid to Invitrogen's subsidiary, Kettlebrook. The Settlement Agreement provides against any such related claim for payment from Kettlebrook. Thus, the Court finds that the Settlement Agreement encompasses and prohibits Wausau's claim for reinsurance payments from Kettlebrook.

**V.       Summary**

The Court finds that Settlement Agreement is the controlling document regarding the dispute over reinsurance payments between Wausau and Kettlebrook. Because the Settlement Agreement is absent of any arbitration provision, Plaintiffs are entitled to summary judgment as to their declaratory claim regarding arbitration. In addition, the Court finds that the release provision of the Settlement Agreement applies to Wausau's claim for reinsurance payments from Kettlebrook and bars Wausau's request. Thus, Plaintiffs are entitled to summary judgment as to their declaratory and breach of contract claims as Wausau has breached the terms of the Settlement Agreement by asserting its claim for reinsurance payments from Kettlebrook. In addition, pursuant to the terms of the Settlement Agreement, Plaintiffs are entitled to their reasonable costs, expenses and attorneys' fees.[2] (PSOF ¶ 29). Lastly, Plaintiffs are entitled to summary judgment as to Wausau's counterclaims asserted in this litigation.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Wausau's Motion for Summary Judgment Regarding Arbitration Requirement. (Dkt.#20). Wausau's declaratory counterclaim as to the issue of arbitration is dismissed with prejudice.

---

[2]The Settlement Agreement sets forth that "[i]n any action of litigation to enforce any of the provisions or rights under this Agreement, the non-prevailing Party to such action or litigation... shall pay the prevailing Party all of its reasonably and necessary costs, expenses and attorneys' fees incurred therein..." (PSOF ¶29).

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Summary Judgment on Arbitrability. (Dkt.#22). Plaintiffs are not required to arbitrate the dispute between Wausau and Kettlebrook regarding reinsurance payments.

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Summary Judgment on All Claims Other Than Arbitrability. (Dkt.#23). Wausau's claim for reinsurance payments is barred by the Settlement Agreement and its request for such breaches the terms of the Settlement Agreement. Wausau's counterclaims of breach of contract and breach of utmost good faith as to Kettlebrook and breach of contract as to Invitrogen are dismissed with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter Judgment Accordingly.

DATED this 9th day of March, 2007.

Mary H. Murguia
United States District Judge